**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

IN RE:

NASHWA KATTOUAH,

          Debtor.

Case No. 11-10238
Bankr. No. 09-53287

_____/

MARC A. GOLDMAN AND ASSOCIATES, P.C.,

          Appellant,

v.

NASHWA KATTOUAH,

          Appellee.

_____/

**OPINION AND ORDER AFFIRMING
BANKRUPTCY COURT'S ORDER CONFIRMING PLAN**

    This appeal presents the question of whether an isolated and contradictory statement made by a debtor in an answer to a complaint filed by a creditor in an adversary proceeding constitutes a binding judicial admission to a fact material to the underlying bankruptcy. The court holds that it does not.

### I. BACKGROUND

    The valuation of an illiquid asset, the real estate commonly known as 2812 South Telegraph Road, Bloomfield Township, Michigan 48302 (the "Property"), is the focal issue here, as it was in the bankruptcy court. Creditor-Appellant Marc A. Goldman and Associates, P.C., argued below that the Property was worth $975,000, discounted some

amount to account for the decline in the value of real estate from 2007 to 2009.[1] Debtor-Appellee Nashwa Kattouah contended the Property was worth $500,000. The bankruptcy court valued the Property at $575,000, a value that was incorporated into the confirmed plan. In this appeal, Creditor contests that finding, claiming that the bankruptcy court erred because it was bound to accept Debtor's purported judicial admission in a related adversary proceeding that the Property was valued at $975,000.

Some additional, relevant procedural history puts this appeal into context. Creditor filed a judgment lien in the amount of $95,903 (plus statutory interest) on the Property on April 13, 2009.[2] Debtor filed a voluntary Chapter 13 petition, along with a plan, on April 28, 2009. On June 30, 2009, Creditor moved to dismiss the bankruptcy, arguing that the plan was not filed in good faith on account of various misrepresentations, one of which related to the valuation of the Property. Creditor alleged that Debtor listed the market value of the Property at $975,000 in a 2007 loan application, but listed it on her amended schedule A at $500,000; Creditor's motion concluded the Property was worth between $700,000 and $800,000. The same arguments were asserted in an objection to the confirmation of the plan filed by Creditor

---

[1] Because the size of the discount is not particularly germane to this appeal and because Creditor has asserted different valuations of the Property ranging from approximately $700,000 to approximately $900,000 throughout the litigation, the court will, in the service of simplicity, refer to Creditor's asserted valuation as $975,000, but the court acknowledges that it is actually somewhat lower.

[2] Creditor—a professional corporation engaged in the practice of law—and Debtor appear not to have had a direct financial relationship; instead, Creditor is the assignee of a judgment against Debtor from one of its clients in exchange for legal services rendered.

the same day.  A first amended plan followed on August 7, 2009, and the same objection regarding the Property was filed five days later.

The court held consolidated hearings on the value of the Property—relevant to both the motion to dismiss and the objection—on January 20 and February 4, 2010.  On March 31, 2010, Creditor filed an adversary proceeding (No. 10-05045) against Debtor, alleging a fraudulent transfer of the Property under Michigan and federal law.  Debtor then both objected to Creditor's claim and filed her own adversary case against Creditor, each of which contested the status of Creditor's lien.[3]  On April 12, 2010, the defendants in the adversary case—Debtor and her husband, Andraos G. Kattouah—filed an answer to Creditor's complaint.  Paragraph 25 of the answer states in full: "The Defendants deny at the time of the transfer pursuant to evidence admitted into evidence in the underlying case the debtor was clearly solvent because this property was valued at $975,000.00 and the mortgage was only $500,000.00[.]"  This lone sentence forms the entire foundation on which Creditor's appeal rests.

On June 2, 2010, the bankruptcy court issued an opinion on the value of the Property.  The opinion recounts that at the hearings, Creditor relied on two facts to reach a valuation of $819,000.  First, Creditor looked to the loan application's sworn statement that the Property was appraised in November 2007 at $975,000.  Second, Creditor presented a real estate broker as a witness who estimated the annual reduction in market property values.  From a starting value and a reduction rate,

---

[3] Debtor's adversary case (No. 10-05148) ended when her unopposed motion for summary judgment was granted and the bankruptcy court held that Creditor's lien on the Property was invalid and that Creditor was to be treated as a Class 8 general unsecured creditor.

3

Creditor reached the $819,000 valuation.  Creditor also furnished the testimony of a partner in a real estate office who estimated, in a June 2009 report, that the Property would sell for between $700,000 and $800,000.  Debtor, a broker or salesperson in her own right, supported the $500,000 figure through her own testimony and that of a different broker.  No licensed appraiser testified.

The bankruptcy court discounted the importance of the $975,000 value, finding, among other things, that the appraiser who asserted that figure in 2007 did not appear for cross examination, that market conditions and unique features of the Property provided only shaky ground for Creditor's proposed analysis, and that the purposes behind a mortgage and bankruptcy valuation differ, and so the outcome of the valuation may, too.  The court found the Property was worth $575,000 on the day the Chapter 13 petition was filed, the relevant date for valuing the Property.

On June 16, 2010, Creditor moved for reconsideration.  The court held a hearing on the motion on August 12, 2010, during which the motion was denied.

Meanwhile, on June 28, 2010, the mortgagee of the Property, The PrivateBank and Trust Company, moved for relief from the automatic stay in order to foreclose on the Property, arguing its rights were not adequately protected because Debtor (and her brother, who was making the mortgage payments) had failed to pay property taxes, exposing the mortgagee to a possible tax foreclosure.  On August 2, 2010, the bankruptcy court granted the motion and lifted the stay with respect to the Property.

Debtor filed a second amended plan on October 26, 2010.  Creditor refiled its objection on November 19, 2010.  On December 15, 2010, the court held a hearing on and denied Creditor's motion to dismiss.  The bankruptcy court issued an opinion

incident to the confirmation of the plan on December 21, 2010, in which it denied Creditor's objection. On January 3, 2011, the second amended plan was confirmed. The order confirming the plan lists Creditor's claim as a Class 8 unsecured claim. Creditor stipulated to the dismissal of its adversary proceeding on January 27, 2011.

The confirmed plan includes a liquidation analysis that lists the fair market value of the Property as $575,000 (the value determined by the bankruptcy court) and lists liens against the Property in the amount of $530,000 (the amount owed on the mortgage and on property taxes). That leaves $45,000 of Debtor's equity, none of which is exempt. Deducting administrative expenses and costs in the amount of $39,950, the plan lists $5,050 as available to general unsecured creditors under Chapter 7. Under the plan, $34,053.80 will be available to unsecured creditors, whose claims total $252,856.93. Approximately 13% of all unsecured claims will be paid.

Thus, had the bankruptcy court accepted the $975,000 starting point, and as a result adopted a valuation closer to $800,000, the liquidation analysis would have looked substantially different. Under that scenario, approximately $230,000 would have been available to unsecured creditors, forcing Debtor either to amend her plan or to convert her case into one under Chapter 7. *See* 11 U.S.C. §§ 1307, 1325.

## II. STANDARD

In reviewing a bankruptcy court's decision, the district court accepts as correct the bankruptcy court's findings of fact, unless they are clearly erroneous. Fed. R. Bankr. P. 8013; *see B-Line, LLC v. Wingerter* (*In re Wingerter*), 594 F.3d 931, 935-36 (6th Cir. 2010). The bankruptcy court's conclusions of law are reviewed *de novo*. *In re Wingerter*, 594 F.3d at 935-36. "[W]hether a particular statement constitutes a judicial

5

admission that excludes certain evidence [is reviewed] under the abuse of discretion standard." *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997); *accord Roger Miller Music, Inc. v. Sony/ATV Publ'g*, 477 F.3d 383, 394 (6th Cir. 2007) ("We review a district court's determination as to whether a particular statement constitutes a judicial admission under the abuse-of-discretion standard."). "[A]n abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made regarding the admission of evidence." *MacDonald*, 110 F.3d at 340.

### III. DISCUSSION

Creditor argues on appeal that the bankruptcy court erred by not treating paragraph 25 of the answer to the adversary complaint as a judicial admission. The court holds there was no abuse of discretion.

"'Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.'" *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) (quoting *Am. Title Ins. Co. V. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)). Judicial admissions are generally binding within the proceeding in which they are made, *see Brown v. Tenn. Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir. 1980), but are admissible only as non-binding evidence in subsequent actions, *Dixie Sand & Gravel Corp. v. Holland*, 255 F.2d 304, 310 (6th Cir. 1958).

A statement must be "deliberate, clear, and unambiguous" to be considered a judicial admission. *MacDonald*, 110 F.3d at 340. In order to satisfy these elements, the statement in context must amount to an express concession of a fact. *See id.*; *Robinson v. McNeil Consumer Healthcare*, 671 F. Supp. 2d 975, 981-82 (N.D. Ill. 2009).

"'Because of their binding consequences, judicial admissions generally arise only from deliberate voluntary waivers that expressly concede . . . an alleged fact . . . .'" *MacDonald*, 110 F.3d at 340 (alteration in original) (quoting *United States v. Belcufine*, 527 F.2d 941, 944 (1st Cir. 1975)).

Even if a statement is an admission, the trial court has "'broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases.'" *Id.* (quoting *Belcufine*, 527 F.2d at 944).  For example, the court may relieve a party from its admission if it was the result of inadvertence or mistake.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Arioli*, 941 F. Supp. 646, 655 (E.D. Mich. 1996).  An internal contradiction within a document strongly suggests inadvertence.  *See Stephenson v. Salisbury* (*In re Corland Corp.*), 967 F.2d 1069, 1074 (5th Cir. 1992); *Wade v. Cavalry Portfolio Servs.*, No. 3:08-CV-479-S, 2010 WL 3395690, at *2 (W.D. Ky. Aug. 25, 2010).  The rest of the record also informs whether a purported admission was inadvertent.  *See Huggins v. Prince George's Cnty., Md.*, 750 F. Supp. 2d 549, 556 (D. Md. 2010).

The bankruptcy court's June 2, 2010, opinion valuing the Property is silent on the judicial admission argument presented here, but it appears from the bankruptcy court filings that the issue was raised in a post-hearing brief.  The court rejected the argument in denying Creditor's motion for reconsideration, finding paragraph 25 intended to highlight the inconsistency between Creditor's assertion of value in the underlying bankruptcy and in the adversary proceeding, and suggesting skepticism over whether a statement made after the hearing on an issue can constitute a binding judicial admission.

This court finds there was no abuse of discretion, for four reasons. Paragraph 25 was inartfully drafted. But it was not deliberate, clear, or unambiguous. Debtor's counsel wrote that "[t]he Defendants deny at the time of the transfer pursuant to evidence admitted into evidence in the underlying case the debtor was clearly solvent because this property was valued at $975,000.00 and the mortgage was only $500,000.00[.]" Surely the defendants in the adversary proceeding did not intend to "deny . . . the debtor was clearly solvent." Rather, the court thinks they intended to deny Debtor's *in*solvency. In addition, the phrase "into evidence" is superfluous. And the sentence, read plainly, contradicts the valuation Debtor had maintained since the bankruptcy was filed.

Second, although the plain language of the paragraph, contrary to Debtor's assertion, does not describe the internal inconsistency in Creditor's arguments, the bankruptcy court quite correctly found credible Debtor's assertion that the paragraph was intended to point out Creditor's conflicting allegations. Bankruptcy cases have the capacity to produce perverse incentives, and this case is no exception. In proposing a plan, Debtor had an incentive to minimize the value of the Property to avoid Chapter 7's reach, *see* 11 U.S.C. § 1325(a)(4), and to reduce payments to unsecured creditors, while Creditor had an incentive to maximize the value for the opposite reasons. In the adversary proceeding, the incentives were flipped: to avoid a finding of fraudulent transfer under a theory of insolvency, Debtor had to argue for a higher valuation, and Creditor had to claim a lower one. *See* 11 U.S.C. § 548(a)(1)(B)(ii)(I); Mich. Comp. Laws §§ 566.32(1), 566.34(2)(I). Thus, this case presented an unenviable situation where both Creditor and Debtor had good reason to talk out of both sides of their

8

respective mouths. Because Debtor had maintained in the bankruptcy the Property was worth $500,000, Debtor's assertion that she intended to point out the inconsistency is believable; in the event that Debtor in fact intended to assert the higher valuation, given her previously well-established position that the valuation was lower, this isolated statement is unable to establish a deliberate and unambiguous position.[4]

Third, Debtor's statement in the adversary proceeding was not necessarily inconsistent with her position in the bankruptcy because each was in reference to a different time. Had the adversary action gone to trial, Debtor would have had to rely on the value of the Property in December 2007, at the time of the allegedly fraudulent transfer. In the bankruptcy case, the relevant valuation is that in April 2009, at the time of filing the petition. *See Neuger v. United States* (*In re Tenna Corp.*), 801 F.2d 819, 820, 823 (6th Cir. 1986) (holding petition date is proper date to value assets for a hypothetical liquidation under 11 U.S.C. § 547(b)). Some sixteen months passed between the two dates, and therefore paragraph 25 did not clearly and unambiguously concede the fact at issue in the bankruptcy.

Finally, even if the statement was sufficient to gain admission status, the court had sufficient justification for utilizing its broad discretion to relieve Debtor of its effect. Within the same answer, Debtor denied a substantially similar allegation in paragraph 20. This internal contradiction within the answer suggests the admission was inadvertent, warranting relief from the admission's preclusive effect.

---

[4] If anything, *Debtor* might have had a colorable argument, had she chosen to raise it, that *Creditor*'s prior assertions in the bankruptcy served as admissions precluding it from bringing the adversary action.

Consequently, the bankruptcy court did not abuse its discretion in rejecting Creditor's assertion that paragraph 25 was a binding judicial admission.[5]

## IV. CONCLUSION

Accordingly, IT IS ORDERED that the bankruptcy court's order confirming plan is AFFIRMED.[6]

        s/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: June 27, 2011

---

[5] Debtor's brief on appeal suggests that Creditor also advances the doctrine of judicial estoppel as a basis for barring Debtor from departing from paragraph 25. (Appellee's Br. 4-6.) Creditor, however, appears to disclaim this argument. (Appellant's Reply 3.) Any estoppel argument would fail, and for similar reasons. Debtor has not "'tak[en] a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding.'" *Pennycuff v. Fentress Cnty. Bd. of Educ.*, 404 F.3d 447, 452 (6th Cir. 2005) (quoting *Warda v. Comm'r*, 15 F.3d 533, 538 (6th Cir. 1994)). The court doubts that an adversary proceeding is an "earlier proceeding," both because neither is it earlier than the bankruptcy action, nor is it a distinct proceeding. *See Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir. 1990) (bankruptcy and adversary proceedings are not distinct). *But see Porges v. Gruntal & Co.* (*In re Porges*), 44 F.3d 159, 163 n.2 (2d Cir. 1995) (proceedings are distinct); *Fid. & Deposits Co. of Md. v. Morris* (*In re Morris*), 950 F.2d 1531, 1534 (11th Cir. 1992). For the reasons stated above, Debtor has not taken a position inconsistent with one unequivocally asserted. And finally, if that were not enough to find Debtor's position not estopped, the bankruptcy court had discretion to decline to apply the doctrine of judicial estoppel to Debtor's statement in paragraph 25. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

[6] Debtor's brief reveals that the Property has been sold at a foreclosure sale, but does not provide the amount for which the Property sold. To the extent that Creditor would be prejudiced if the Property garnered more than the bankruptcy court's $575,000 estimate, a handful of statutes adequately protect Creditor's interests. *See* 11 U.S.C. § 1329 (allowing for modification of the plan on the motion of an unsecured creditor); Mich. Comp. Laws §§ 125.1448h(1), 125.1449n (providing for the payment of any surplus from a foreclosure sale to the mortgagor or to another person with a claim, such as a lien holder or secondary mortgagee).

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 27, 2011, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\11-10238.KATTOUAH.BankruptcyAppeal.jmp.wpd